In re CALANIA CORPORATION, d/b/a Proctor's Jewelers; Successor by Merger to Acordia, Inc., d/b/a Proctor's Diamond Center, Debtor.

Bankruptcy No. 93–1668–8P7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 8, 1995.

Mark D. Hildreth, Sarasota, FL, for debtor.

Eugene V. Allen, Trustee, Largo, FL.

Allan C. Watkins, Tampa, FL, for trustee.

## ORDER ON MOTION TO DETERMINE TRUSTEE'S ENTITLEMENT TO POSSESSION OF UNITED STATES MAIL

ALEXANDER L. PASKAY, Chief Judge.

THIS IS presently a Chapter 7 case and the matter under consideration is a Motion to Determine Trustee's Entitlement to Possession of United States Mail filed by the Debtor, Calania Corporation (Debtor). This case originally was filed as a Chapter 11 case on February 16, 1993. On March 18, 1994, an Order was entered confirming the Debtor's Modified Second Amended Plan of Reorganization. On February 8, 1995, almost eleven months after confirmation, the case was converted to a case under Chapter 7 pursuant to motions filed by certain creditors of the Debtor, and Eugene V. Allen was appointed as the Chapter 7 Trustee.

In its Motion to determine the Chapter 7 Trustee's entitlement to the Debtor's mail, the Debtor contends that the mail is a post-confirmation asset which vested in the reorganized Debtor pursuant to the Order of Confirmation and Section 1141(b) of the Bankruptcy Code, that the mail is not property of the Bankruptcy estate, and that the Chapter 7 Trustee therefore has no right or entitlement to the mail. The Trustee contends that he is entitled, if not required, to receive and inspect the mail in order to fulfill his duty to investigate the financial affairs of the Debtor and administer the Bankruptcy estate. The facts relevant to the resolution of this controversy as they appear in the record are as follows:

42

Prior to the filing of its Chapter 11 Petition, the Debtor operated several retail jewelry stores in California. The Debtor's headquarters were located in Sarasota, Florida. The Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on February 16, 1993, and operated its business during the Chapter 11 case pursuant to court authorization. The Debtor's Second Amended Plan was confirmed on January 21, 1994. The Debtor modified the Second Amended Plan after it was confirmed, and on March 18, 1994, an Order was entered confirming the Modified Second Amended Plan. The Plan as confirmed provided for the continued operation of the business. It was not a liquidating plan.

The Debtor's primary secured creditor was Magnum Limited. The Debtor defaulted under its obligations to Magnum Limited by failing to make the payments to Magnum in accordance with the terms of the confirmed Plan. It appears that the Debtor also defaulted under the terms of the confirmed Plan with respect to its provisions for payment to unsecured creditors. The Debtor discontinued the operation of its business in September of 1994, and liquidated its inventory. The proceeds of the liquidation were paid to Magnum.

On November 4, 1994, certain unsecured creditors filed a Motion to Compel Compliance with Plan or Motion to Convert to Chapter 7, and alleged that they had neither been paid nor received promissory notes for payment as required under the confirmed Plan. On November 28, 1994, the Debtor filed its Motion to Dismiss Chapter 11 Case. In this Motion, the Debtor stated that (1) significant distribution was made to certain unsecured creditors in April of 1994 pursuant to the confirmed Plan; (2) the Debtor defaulted under the terms of the plan with respect to Magnum and also with respect to other unsecured creditors; (3) the Debtor ceased operating in September of 1994 and sold all of its inventory for the sum of $1,300,000; and (4) the proceeds of the sale were paid to Magnum, although this sum was less than the amount of Magnum's perfected secured claim. Consequently, the Debtor asserted that no significant assets remained in the estate, and that the case should therefore be dismissed rather than converted to a Chapter 7.

On February 8, 1995, following notice and a hearing, the Court entered an Order converting the case to a Chapter 7, and Eugene V. Allen was appointed as the Chapter 7 Trustee. The Order of Conversion rescinded the prior order which authorized the debtor-in-possession to continue to do business, but did not address the effect of the order of confirmation. In any event, the Trustee requested the United States Post Office to forward to him all mail addressed to the Debtor, and this dispute arose when the Debtor also claimed the mail.

The issue for this Court to determine appears to involve the extent of the property which passes to a Chapter 7 estate upon the conversion of a pending Chapter 11 case to a Chapter 7 case following confirmation of a Chapter 11 Plan. In other words, does the Chapter 7 estate only consist of those assets which did not "vest" in the Debtor as a consequence of confirmation, or does it consist of all of the assets which were included in the prior Chapter 11 estate? The question concerns the interplay of several sections of the Bankruptcy Code.

First, Section 541 contains the definition of "property of the estate," and provides that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." The two key components of this definition for purposes of the case under consideration are that (1) the estate consists of property *of the debtor*, and that (2) the estate is determined as of the commencement of the case.

The second relevant section of the Bankruptcy Code is Section 348, which contains the provisions regarding the effect of conversion. Although a conversion constitutes an order for relief under the new chapter, Section 348(a) states that the conversion does not effect a change in the date of the commencement of the case. It would therefore appear from the combined operation of Section 541 and Section 348 that the conversion of a case does not affect the scope of the property of the estate in the converted case,

since that property had been fixed as of the date of the original filing.

The third relevant section of the Bankruptcy Code is Section 1141, regarding the effect of confirmation in Chapter 11 cases. That section provides that the confirmation of a plan "vests all of the property of the estate in the debtor," unless otherwise provided in the plan or the order confirming the plan. The confirmation of a plan, however, does not necessarily dispose of the bankruptcy case. Instead, the case generally remains pending even after confirmation until the plan is substantially consummated and a final decree is entered. Therefore, it appears that the case continues even though all property of the estate has been vested in the reorganized debtor pursuant to Section 1141(b).

Finally, Section 1112 contains the provisions regarding the dismissal or conversion of Chapter 11 cases. Specifically, Section 1112(b) provides for such dismissal or conversion on the request of a party in interest, for "cause." Subsection 1112(b)(7) and subsection 1112(b)(8) explicitly state that such cause includes the debtor's inability to effectuate substantial consummation of a confirmed plan and the debtor's material default with respect to a confirmed plan. This section, therefore, clearly contemplates the conversion of a Chapter 11 case following confirmation of the chapter 11 plan.

Based on the foregoing it would be utterly pointless to make a provision for the conversion of an aborted Chapter 11 case to a Chapter 7 case if by virtue of Section 1141 there would not be any assets for the Chapter 7 trustee to administer. A careful analysis of the Code provisions permits only one conclusion that properties which were subject to the confirmed plan that is properties in which the Debtor had a cognizable legal or equitable ownership interest on the date of confirmation will be properties of the estate in a Chapter 7 case, but properties which are clearly acquired by the Debtor post-confirmation will not be subject to administration by the Chapter 7 trustee. The difficulty in this case, however, stems from the fact that the controversy centers around not specifically identifiable properties but the mail received by the Debtor pre- and post-confirmation. While pursuant to the reasoning outlined the Chapter 7 trustee is clearly entitled to the mail received pre-confirmation, it logically follows that the Chapter 7 trustee would be entitled to have access to all mail received to determine whether or not the mail is relevant to the assets which are subject to administration and which is not. For instance, it is not unlikely that a debtor who operated a chain of jewelry stores received or is possibly still receiving payments on accounts receivable which were in existence on the date of confirmation and were properties of the estate. For this reason, this Court is of the opinion that the Trustee should be given an opportunity to have access to the mail at a reasonable time and mutually agreed place or direct the mail to be delivered, with the Debtor's right to inspect the same, to assure that the Trustee is not appropriating properties which are not subject to administration in the Chapter 7 case.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Trustee is authorized to direct the postal authorities to redirect the mail to an address designated by the Trustee. It is further

ORDERED, ADJUDGED AND DECREED that upon receipt of the mail, the Trustee shall forthwith notify counsel for the Debtor and offer him an opportunity to inspect the mail received and to take possession of those items which do not relate in any way to properties which are subject to administration in the Chapter 7 case.

DONE AND ORDERED.