**In re Darrell D. SMITH, Debtor.**

**Darrell D. SMITH, Appellant,**

**v.**

**John Peter LEE, Ltd., Appellee.**

**Nos. CV–S–96–133–PMP (RLH), BK–S–91–21026–RCJ.**

United States District Court, D. Nevada.

Oct. 10, 1996.

Darrel D. Smith, Las Vegas, NV, in ·pro. per.

John Peter Lee, Nancy Allf, Las Vegas, NV, for appellee.

Tom Grimmett, Trustee, Las Vegas, NV.

### OPINION

PRO, District Judge.

Appellant Darrell D. Smith ("Smith") appeals the Order entered by the United States Bankruptcy Court (D.Nev.) on February 6, 1996, converting his Chapter 11 Plan to a Chapter 7 liquidation. Smith's Motion for Reconsideration was denied on February 15, 1996. Smith filed his notice of appeal to the United States District Court on February 7, 1996, and objected to a referral to the Bankruptcy Appellate Panel on February 15, 1996. On February 20, 1996, this Court denied Smith's Emergency Motion for Stay of Order Granting Order to Convert. Smith appealed this decision, and on March 15, 1996, the Ninth Circuit Court of Appeals denied his appeal. On August 2, 1996, Smith filed his Opening Brief (# 594). Appellee John Peter Lee, Ltd., (# 596) and Trustee Tom Grimmett (# 595) filed Reply Briefs on August 16, 1996. Smith filed his Reply Brief (# 597) on August 26, 1996.

### I. Background

Appellant Smith originally filed his Voluntary Petition under Chapter 11 of the Bankruptcy Code in the District of Nevada on March 22, 1991. Smith's Third Plan of Reorganization ("Plan") was confirmed by an Order on January 11, 1994.[1] The means of funding the Plan were Smith's litigation against his ex-wife for an interest in the Tropicana Hotel and Casino, and from the making and selling of prints of the Maxfield Parrish painting *Daybreak,* which Smith owned. (Third Plan of Reorg. p. 7).

On March 31, 1995, John Peter Lee, Ltd., ("Lee") moved to withdraw as Smith's attorney. Lee also moved to convert Smith's Chapter 11 case to a case under Chapter 7, and to require the sale of the bankruptcy estate's assets, most notably *Daybreak.* On May 10, 1995, the bankruptcy court granted Lee's Motion to Withdraw.

The preliminary hearing on the Motion to Convert was held on May 1, 1995. The bankruptcy court denied Lee's motion without prejudice, and set a status check hearing for October 3, 1995. In its ruling, the bankruptcy court stated that Smith could not simply stand on the litigation as the source of payment, but that Smith must produce prints of *Daybreak* with reasonable haste. (Trans. May 1 Mtn. to Convert, p. 15.) A second status hearing was set for October 24, 1995, to allow Smith to show that he was not in default of the Plan. At the October 24 hearing, the bankruptcy court ordered Smith to show at a third hearing on January 23, 1996, that he had made "reasonable efforts to start producing prints and marketing them." (Trans. Oct. 24 Status Hearing, p. 1). The bankruptcy court also stated its intention to

---

1. Smith's first two proposed Chapter 11 plans were not confirmed due to Smith's involvement in litigation which was eventually settled or otherwise resolved.

convert the case to Chapter 7 if such efforts were not shown at the next hearing. (Trans. Oct. 24 Status Hearing, p. 1).

At the January 23, 1996, hearing, the bankruptcy court found that Smith had not made reasonable efforts to sell and market prints of *Daybreak*.[2] A tentative ruling was made to convert the case to Chapter 7, but the court did not order a sale of *Daybreak* at that time. (Trans. Jan. 23 Mtn. to Convert, p. 12). The court indicated it would appoint a Trustee, but allowed Smith one week to file a Motion for Reconsideration.

Smith filed a Motion for Reconsideration which the bankruptcy court denied on February 15, 1996. A timely Notice of Appeal to this Court was filed on February 8, 1996.

## II. Standard of Review

■ The bankruptcy court's findings of fact shall not be set aside by a reviewing court unless those findings are clearly erroneous. *In re Candland*, 90 F.3d 1466, 1469 (9th Cir.1996). Conclusions of law are reviewed *de novo*. *Havelock v. Taxel (In re Pace )*, 67 F.3d 187, 191 (9th Cir.1995). A bankruptcy court is given wide discretion to convert a Chapter 11 case to Chapter 7 for cause, and such a conversion is reviewed under an abuse of discretion standard. *Johnston v. Jem Development Co., (In re Johnston)*, 149 B.R. 158, 160 (9th Cir. BAP 1992). Legislative history indicates that cause is broadly defined, allowing a court to "consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H.R.Rep. No. 595, 95th Cong., 1st Sess. 405, n. 1 at 405–06 (1977).

## III. Discussion

### A. Smith's Failure to Sell and Market Prints of *Daybreak* Constituted Sufficient Cause to Convert His Chapter 11 Case to Chapter 7.

Smith alleges that the bankruptcy court erred in determining that the failure to sell and market prints of *Daybreak* justified con-

version of Smith's Chapter 11 Plan to Chapter 7. This Court finds that the basis for the bankruptcy court's decision to convert is clearly articulated in the record and well supported by factual findings, and therefore upholds the decision of the bankruptcy court.

### 1. The Bankruptcy Court's Interpretation of the Plan.

■ The bankruptcy court interpreted the Plan as a matter of fact and law as requiring that the Plan be funded through Smith's state court litigation and the publishing, printing, and making of prints of *Daybreak*. (Trans. Jan. 23 Mtn. to Convert p. 7). The Plan states, "The Debtor has two means upon which to fund his Plan of Reorganization, litigation and making and selling prints of the painting *Daybreak*, which he owns." (Third Plan of Reorg. p. 7). On page nine, the Plan states, "Smith will use the proceeds of the litigations and the funds from the sales of prints of *Daybreak* to pay all creditors in full with 8% interest." *Id.* at 9.

The bankruptcy court interpreted the Plan as encompassing two deadlines, one a 60–month time period in which to pay creditors, and the other a requirement that Smith make reasonable efforts towards producing and marketing prints. (Trans. Oct. 24 Mtn. to Convert p. 1). The court explicitly stated that it was removing the ambiguity and that Smith was to return in January and show strong efforts towards the beginning of production and marketing of prints. (Trans. Oct. 24 Mtn. to Convert p. 1). Given the plain language of the Plan, the bankruptcy court's interpretation requiring reasonable efforts to sell and market prints was entirely appropriate.

The Plan on page nine provided that if creditors were not paid or if Smith lost both litigations and there were insufficient profits from the prints of *Daybreak* to pay all claims, Smith would arrange to sell *Daybreak* to pay creditors. (Third Plan of Reorg. p. 9). Smith claims this imposed a duty on him to engage in a Chapter 11 liquidation of *Day-*

---

2. Smith's state court litigation against his ex-wife was largely unsuccessful. His claim for community property in the Tropicana Hotel was denied, and his recovery in *quantum meruit* was $80,000.

(Trans. May 1 Mtn. to Convert p. 4). Smith had anticipated that his claims in the suit would be worth $9,000,000 as a conservative estimate. (Third Plan of Reorg. p. 8).

*break* in the event other funding sources failed. Therefore, Smith claims, the bankruptcy court had no grounds to convert his Chapter 11 Plan, since a Chapter 11 sale was the final option for funding the Plan. Smith alleges he would only be in breach of the Plan if he refused to sell once the litigation, the sale of prints and the sale of *Daybreak* itself had failed.

Smith alleges that the bankruptcy court interpreted the Plan as creating an absolute duty to sell prints of *Daybreak,* and that such an absolute duty is not within the plain language of the Plan. However, the bankruptcy court did not convert the Plan because Smith failed to sell or market prints, but because he failed to make *reasonable efforts* to sell or market prints. The court did not reinterpret the plan to include an absolute duty to sell, as Smith alleges, rather it held that there were two deadlines, one of reasonable efforts to sell and market prints and the 60–month calendar deadline. (Trans. Oct. 24 Mtn. to Convert p. 1). The court ruled that Smith had failed to meet the threshold showing of reasonable efforts, and was in material default of the Plan. Therefore, this Court holds that the bankruptcy court appropriately interpreted the Plan to require reasonable efforts to sell and market prints of *Daybreak.*

### 2. The Bankruptcy Court's Finding of Cause to Convert Smith's Chapter 11 Plan to Chapter 7.

■ The bankruptcy court was correct in concluding that cause existed to convert Smith's Chapter 11 Plan to Chapter 7. The court's conversion of Smith's case was justified under 11 U.S.C. § 1112(b)(7) and (8).[3] Section 1112(b) provides for a conversion of a Chapter 11 case to a Chapter 7 case for cause, which includes the inability to effectuate substantial consummation of a confirmed plan and material default by the debtor. The finding that Smith had defaulted on the plan and was unable to effectuate the Plan are factual issues that will be overturned only if clearly erroneous.

The bankruptcy court held four status hearings to allow Smith to show that he was making reasonable efforts and that he had the ability to sell and market prints of *Daybreak.*[4] After the court preliminarily granted the motion to convert, Smith was given a further opportunity to file a motion for reconsideration before *Daybreak* was sold pursuant to Chapter 7. (Trans. Jan. 23 Mtn. to Convert p. 12). Smith had ample opportunity to make a showing of reasonable efforts to sell and market the prints.

■ The record is clear that Smith was unable to effectuate a substantial consummation of the confirmed plan under section 1112(b)(7). The court found that making prints was impractical due to over-production and the complications of having the painting tied up in a bankruptcy case, and that Smith did not have the funds necessary to undertake the effort to sell and market prints himself. (Trans. Jan. 23 Mtn. to Convert p. 9–10). The litigation method of funding the Plan was also impractical, since Smith lost the community property claim in the Tropicana Hotel and is waiting for an appeal to the Nevada Supreme Court. Even if the Nevada Supreme Court remands the case, it was not an abuse of discretion for the bankruptcy court to conclude that Smith would not recover his monetary claim within the 60–month time frame in the Plan.

■ There was also an adequate factual finding to support the bankruptcy court's decision to convert the case under section 1112(b)(8) due to a material default of the confirmed Plan. The court resolved any possible ambiguity in the Plan by clearly stating that a threshold showing of reasonable efforts to sell and market prints must be met by Smith. Smith's only effort was a mass mailing of 200 form letters, sent in November and December of 1995. The letters inquired if certain persons or entities would be interested in using a poster of *Daybreak* in a promotion or in purchasing *Daybreak* while Smith retained rights to reproduce or repurchase the painting. (Jan. 16 Status Report, Appendix). Of the entities solicited, only Wal–Mart showed some interest by request-

---

3. All references are to 11 U.S.C. unless otherwise noted.

4. Hearings were held on May 1, 1995, October 3 and 24, 1995, and January 23, 1996.

ing a formal application. (Jan. 16 Status Report, p. 2).

The bankruptcy court was not clearly erroneous in determining that Smith's minimal effort seven months after the Motion to Convert was originally filed was a default of his obligation to use reasonable efforts to sell and market prints of *Daybreak*. The court's conversion to Chapter 7 based on either impracticality or on material default by Smith is adequately supported by facts in the record. Smith had 10 months to show reasonable efforts to sell and market prints of *Daybreak*. His state court litigation, which he estimated was worth $9,000,000, resulted in an award of $80,000. The bankruptcy court found that implementation of the Chapter 11 plan was not feasible, and that Smith had materially defaulted in the Plan. Furthermore, the court found that selling *Daybreak* in early 1996 would be in the best interest of the creditors. The factual findings of the bankruptcy court were that the painting had just come off tour, that the painting had been displayed extensively, and that the longer the sale was postponed after the tour, the lower the eventual sale price would be. (Trans. Jan. 23 Mtn. to Convert p. 10–11). The final sale of *Daybreak* illustrates that these finding were correct. While estimates from all parties for the sale price were approximately $1.5–2.5 million, *Daybreak* eventually sold at a Sotheby's Auction for $3.9 million. (Appellee Lee's Reply Brief, p. 8). This Court therefore upholds the conversion of Smith's Chapter 11 case to Chapter 7.

## B. The Conversion of a Confirmed Plan From Chapter 11 to Chapter 7 Under 11 U.S.C. Section 1112(b)(7–9).

■ The ability of a bankruptcy court to convert a confirmed Chapter 11 Plan to a Chapter 7 case is covered by section 1112(b). Subsection (b) provides for an involuntary conversion for cause, which specifically includes: (7) the inability to effectuate substantial consummation of a confirmed plan; (8) material default by the debtor with respect to a confirmed plan; and (9) termination of a plan by reason of the occurrence of a condition specified in the plan. 11 U.S.C. § 1112(b) (1996). Smith argues that several

other provisions of Chapter 11 nullify or greatly limit a court's ability to order conversion. As Smith's interpretation of section 1112 alters the plain meaning of the statute and limits a bankruptcy court's powers without any showing of Congressional intent, this Court rejects such an interpretation and affirms the decision of the bankruptcy court.

The fundamental basis for statutory interpretation is the language of the statute itself. *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). Courts must presume that Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Smith alleges that sections 541, 1141, and 348 work to rewrite 1112, the provision regarding a bankruptcy court's ability to convert a Chapter 11 case to a Chapter 7 case. Section 541 provides:

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) [A]ll legal or equitable interests of the debtor in property as of the commencement of the case. . . .

11 U.S.C. § 541 (1996). Section 1141 states that, "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Finally, section 348(a) provides:

Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C. § 348(a) (1996). Smith argues that these three provisions, taken as a whole, eliminated the bankruptcy court's ability to order a conversion of his case.

Smith alleges that although section 1112 provides for conversion of a confirmed plan in certain situations, section 1141 vests all

property of a bankruptcy estate in the debtor when a plan is confirmed. Therefore, the assets of Smith's estate vested in Smith upon the confirmation of his Plan, and there was no bankruptcy estate to convert to Chapter 7. Since section 541 provides for the creation of an estate upon the *commencement* of a case, and not upon the conversion of a case, the bankruptcy court had no power to create a new Chapter 7 estate. Finally, Smith argues that because section 348(a) provides that the date of commencement of the case does not change, no new estate is created.

Smith acknowledges that there is no Ninth Circuit or other Circuit Court case law directly on point. Bankruptcy courts have split as to this particular issue. As a result, Smith relies primarily on *In re T.S.P. Industries,* 117 B.R. 375 (Bankr.N.D.Ill.1990) ("*T.S.P.*") for support. In *T.S.P.,* the United States Trustee moved to dismiss, or in the alternative to convert a Chapter 11 case to Chapter 7 based on default by the Debtor. 117 B.R. at 375. The Trustee knew of no assets in the hands of the Debtor at that time. *Id.* at 376. The court noted that "[c]ourts have wide discretion in deciding whether or not to dismiss or covert a case." *Id.* Despite the plain language in section 1112 allowing courts to convert a confirmed plan, the court found that the bankruptcy court had no power to convert the case once the plan had been confirmed, since the estate had vested in the Debtor. *Id.* at 378–79. The court found that conversion to Chapter 7 did not "revest" property in the estate, and therefore, there was no estate to convert. *Id.* at 378.

The bankruptcy court in the present case expressly rejected the holding of the *T.S.P.* court. (Feb. 15 Mtn. for Reconsid. p. 1).[5] This Court upholds the bankruptcy court's decision, and declines to follow the reasoning of the *T.S.P.* court.

If the *T.S.P.* court's premise was correct, section 1112(b)(7–9) would be meaningless. There would be no method of converting any

confirmed plan under Chapter 11, since by definition a confirmed plan would entail destruction of the Bankruptcy estate and a vesting of all previous estate property in the Debtor. All confirmed plans would be unenforceable, since there would be no bankruptcy estate over which a court would have jurisdiction.

The *T.S.P.* court attempted to avoid this conclusion through two exceptions. The court stated that any benefit that creditors received from conversion would be illusory, as there was no property of the estate after conversion, and therefore there was nothing to benefit from. *Id.* at 378. However, the court then stated that post-confirmation conversion of a Chapter 11 plan could be in the best interest of the creditors if: (1) there was a preference or fraudulent conveyance that occurred before the commencement of the Chapter 11 proceeding and (2) there were no current significant assets. *Id.* at 378–79. The court gave no explanation as to why section 541 did not vest the property in the debtor in such a situation. The court also failed to explain why an estate survived confirmation of a plan *only* when fraud occurred before the estate was created and no significant assets existed at the time of conversion. Secondly, the *T.S.P.* court argued that if a plan provided for conversion and the retention of jurisdiction over property in the event of a default, conversion could be appropriate. *Id.* at 379. The court provided no legal precedent or Congressional support for allowing specific language in an individual plan to override section 541, which vests property in the Debtor upon confirmation of a plan.

■ The *T.S.P.* court's analysis would virtually eliminate the power of courts to convert confirmed plans, a power which is expressly granted in section 1112(b)(7–9), and it would grant courts the power to nullify the revesting of the estate in the debtor under section 541 by explicitly retaining jurisdiction over a particular plan. This Court will not change the statutory power of a court to

---

5. The bankruptcy court stated that property revested in the Debtor upon confirmation becomes property of a Chapter 7 estate upon conversion. (Feb. 15 Mtn. For Reconsid. P. 1–2). Even if Appellant is correct that a *new* estate is not created, conversion of the original Bankruptcy estate is entirely appropriate, since the estate survives confirmation for purposes of enforcing the Chapter 11 plan.

274

convert under section 1112(b)(7–9) in such a drastic manner without a finding of Congressional intent. Furthermore, the Plan in this case specifically provided:

After confirmation the court shall continue to retain exclusive jurisdiction over these proceedings until the provisions of the Plan have been fully performed for the following purposes: ... (6) supervising the enforcement of the plan; and (7) for such other purposes as the court shall determine.

(Third Plan of Reorg. p. 12). Thus, even under the analysis of the *T.S.P.* case, the bankruptcy court retained jurisdiction to supervise enforcement and for other purposes. This Court finds that such provision encompassed conversion, and as a result, conversion was a proper exercise of the bankruptcy court's discretion.

Smith also cites *In re State Airlines,* 873 F.2d 264 (11th Cir.1989) ("*State Airlines*") in support of his interpretation of section 1112(b)(7–9). However, *State Airlines* decided the "very narrow issue" that the automatic stay under section 362(a) was not reimposed upon conversion. 873 F.2d at 267 n. 5, 278. The court stated that, "[i]f Congress had intended for a conversion to trigger the automatic stay of section 362 it could very easily have said so explicitly." *Id.* at 268. The court also found that if Congress had intended to have such a significant impact as reimposing the stay, it would have indicated its intention to do so. *Id.*

Adopting the *State Airlines* rationale, if Congress had intended section 1141 to limit conversion under 1112, it would have so indicated. If Congress intended that courts must retain jurisdiction in order to utilize subsections 7–9 it would have articulated that limitation in the statute. Congress explicitly provided a clear mechanism to convert confirmed plans under 1112(b)(7–9). This Court refuses to override the language Congress provided by rewriting section 1112(b) to virtually prohibit conversion of confirmed plans.

Given the statutory language of section 1112(b)(7–9), this Court finds the rationale of cases such as *In re Calania Corp.,* 188 B.R. 41 (Bankr.M.D.Fla.1995) ("*Calania*") persuasive. In *Calania,* the court examined the interplay of the sections of the Bankruptcy Code at issue, and concluded that:

The confirmation of a plan, however, does not necessarily dispose of the bankruptcy case. Instead, the case generally remains pending even after confirmation until the plan is substantially consummated and a final decree is entered. Therefore, it appears that the case continues even though all property of the estate has been vested in the reorganized debtor pursuant to Section 1141(b).

*Id.* at 43. The court also found that it would be "utterly pointless" for Congress to create the provisions of 1112(b)(7–9) if section 1141 meant there would be no trust assets to administer. *Id.* at 43.

■ The only interpretation of the interplay of sections 348, 541, 1141 and 1112(b) that is consistent with the plain language of 1112 is the interpretation of the *Calania* court. Section 348, which provides that the date of commencement of a plan does not change upon conversion simply means that property constituting the estate of the debtor is determined as of the date of commencement. When a plan is converted, this is the only property that the court has jurisdiction over. A court would not look at property acquired after confirmation in determining the estate for purposes of conversion to Chapter 7. *See Calania,* 188 B.R. at 42–43.

■ The confirmation of a Chapter 11 plan does not automatically terminate a bankruptcy court's jurisdiction. *In re Sultan Corp.,* 81 B.R. 599, 602 (9th Cir. BAP 1987). If section 548 truly vested property in the debtor in such a way that it could never be reached by a court, there would be no way to enforce a confirmed plan under Chapter 11. A debtor could, as in the present case, materially default or lose all ability to effectuate a plan and creditors would be entirely without remedy. Such an interpretation is contrary to the plain language of 11 U.S.C. and the goals of making creditors whole. For these reasons, this Court upholds the conclusions of law and fact of the bankruptcy court in this case.

IT IS THEREFORE ORDERED THAT the Order Converting Smith's Chapter 11

case to Chapter 7 entered by the bankruptcy court is AFFIRMED.