**In re D & D FURNITURE, INC., Debtor.**

**Bankruptcy No. 98–12235DAS.**

United States Bankruptcy Court, E.D. Pennsylvania, Pennsylvania Division.

Sept. 14, 1999.

Albert A. Ciardi, III, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA, for debtor.

Leslie Beth Baskin, Spector Gadon & Rosen, P.C., Philadelphia, PA, for Federal Realty Investment Trust.

Christopher R. Momjian, Office of the Attorney General, Philadelphia, PA, for Commonwealth Department of Revenue.

John D. Maida Associates, c/o Susan Gibbons Reiss, Norristown, PA, for Sovereign Bank, successor to Main Line Bank.

Susan Gibbons Reiss, Philadelphia, PA, for Sovereign Bank, successor to Main Line Bank.

Joseph J. Bodnar, Wilmington, DE, for SPCI Group, Inc.

Mark A. Fink, Kenneth O. Carobus, Philadelphia, PA, Shirley C. Alrich, West Brandywine, PA, Craig H. Fox, Norristown, PA, for Interested Creditor.

Frank J. Perch, III, Philadelphia, PA, Attorney Advisor, United States Trustee's Office.

Frederic Baker, Philadelphia, PA, Ass't U.S. Trustee.

### OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The resolution of the instant request of the United States Trustee ("the USTE") to convert this Chapter 11 case to a Chapter 7 case post-confirmation requires us to "venture into analysis of the impact of a confirmed plan of reorganization upon a subsequent conversion to Chapter 7," an area which, we, like Circuit Judge Edith H. Jones, approach "[w]ith some trepidation." *In re Pavlovich*, 952 F.2d 114, 116 (5th Cir.1992). Because we believe that most of the assets of this debtor will consist of property which will be acquired post-conversion pursuant to actions against the Debtor's agents and principals on account of post-petition causes of action, we find that there will be, under either of two competing lines of cases as to whether a Chapter 7 trustee succeeds to all of a post-confirmation debtor's assets, an estate for a Chapter 7 trustee to administer. Therefore, we will convert this case to a Chapter 7 case.

### B. PROCEDURAL AND FACTUAL HISTORY

D & D FURNITURE, INC. ("the Debtor") filed the underlying Chapter 11 bankruptcy case on February 19, 1998. Prior to the filing, the Debtor operated a retail furniture store which, as far as we can tell, never intended to continue with its business after bankruptcy. Thus, on February 27, 1998, it filed a motion to employ SPCI-Group, Inc. ("SPCI") as a consultant and financier of its post-petition liquidation.

On March 25, 1998, that motion was approved and an application to employ SPCI as a consultant with full authority to sell the Debtor's remaining inventory was filed. Pursuant to this agreement, SPCI was apparently to receive the greater of either (1) a commission of ten (10%) percent of the Debtor's gross sales, plus $195 weekly and reasonable lodging costs for SPCI's "on-site managers;" or (2) a four (4%) percent commission on the total of customer sale prices of all unfilled customer orders satisfied during SPCI's tenure. We granted this application on May 6, 1998 ("the 5/6/98 Order"), but provided that SPCI was "to be paid on a weekly basis after the court reviews the request for compensation for that week."

The Debtor's Third Amended Plan of Reorganization ("the Plan") was confirmed on July 8, 1998. The Plan contemplated payment of non-tax priority claims, which included mostly or exclusively customer deposits as defined by 11 U.S.C. § 507(a)(6), in full; sixty (60) payments of $544.02 on a secured claim of Main Line Federal Bank ("the Bank") in the total amount of $21,846.65; and payments totaling six (6%) percent of their claims to unsecured creditors, two (2%) percent to be paid thirty days after confirmation and one (1%) percent semi-annually thereafter. Priority tax claims were "unclassified" and

were apparently to be dealt with separately. The disbursing agent named was Ernie DiGiacomo ("Ernie"), one of the Debtor's principals. The Plan recites at several places that the Debtor would receive a discharge, but also provides that the discharge would not be received "until all allowed taxes are paid in full." We could not locate any other provisions in the Plan relative to consequences of the Debtor's defaults of the terms of the Plan.

On December 15, 1998, we entered an order requiring *inter alia,* the Debtor's filing of monthly reports and a cumulative plan implementation report, as required by former Local Bankruptcy Rule ("L.B.R.") 3021.1, which was subsequently substantially re-enacted as Local Bankruptcy Rule ("L.B.R.") 3021–1, effective February 1, 1999, and scheduling a plan implementation hearing on February 24, 1999.

No plan implementation reports were ever filed by the Debtor. At the February 24, 1999, hearing, the USTE reported that the Debtor had also made no distributions under the Plan and owed significant fees to the USTE. The USTE's representative also reported that her office was investigating the practices of SPCI and its affiliates in this case and at least one other case, subsequently identified as *In re Nolan Furniture, Inc.,* Bankr.No. 98–31359SR. The USTE's requests to continue the plan implementation hearing until March 24, 1999, and then to May 26, 1999, were granted.

On April 15, 1999, the USTE filed the motion to convert this case to a Chapter 7 case or dismiss it ("the Motion") which is now before us for disposition. The Motion was first listed on May 26, 1999. On that date the USTE's representative stated that she intended to file a motion to compel SPCI to disgorge the funds paid to it ("the Disgorgement Motion"). Therefore, on that date we entered an order requiring the USTE to file the Disgorgement Motion by July 2, 1999, and we scheduled a hearing on the Disgorgement Motion and re-

scheduled all other matters pending in this case on July 28, 1999.

The USTE filed the Disgorgement Motion on July 2, 1999. A continuance of the July 28, 1999, hearings was granted until September 1, 1999, on the condition that no further continuances would be allowed.

On September 1, 1999, the USTE's representatives and counsel for SPCI and the Debtor appeared. We should also add that, over the entire period since February 1999, no creditors or other interested parties had appeared, and we had not carefully reviewed any of the prior pleadings filed in the course of this case.

The USTE and SPCI's counsel indicated at that hearing that they had orally agreed to settle the Disgorgement Motion by SPCI's repayment to the Debtor's estate of $15,000 out of approximately $70,000 received as total compensation paid to SPCI in this case. Having reviewed the 5/6/98 Order prior to the hearing for the first time in over a year, we observed that SPCI had made no weekly requests for payment as that order required, and therefore might be obliged to disgorge the entire amount of compensation paid to it.

The USTE also sought to press the conversion aspect of the long-dormant instant Motion, indicating that Ernie or his co-principal, Anthony DiGiacomo (collectively "the DiGiacomos") had received compensation during the course of this case despite the Debtor's failure to comply with the predecessor of Local Bankruptcy Rule ("L.B.R.") 4002–1. (*See In re Lynx Transport, Inc.,* 1999 WL 615366, at *1–*2, for the text of L.B.R. 4002–1, requiring a debtor's employee—officers to provide notice to certain interested parties within 45 days after the bankruptcy filing in order to have the right to receive post-petition compensation; and *id.* at *3–*4, for a discussion upholding that Rule's validity.) The Debtor resisted conversion. We noted the presence of authority addressing the question of what assets would become part of the Debtor's estate upon a post-confirmation conversion of a Chapter 11 case to a

Chapter 7 case. Ultimately, we entered an Order requiring the USTE to file a motion to approve its agreement with SPCI and the USTE and the Debtor to file briefs addressing the conversion issue by September 10, 1999. That order also provided that

> [a] hearing to determine whether the [USTE's] Agreement [with SPCI] should be approved, whether SPCI should disgorge additional funds, whether this case should be converted to a Chapter 7 case, and to determine whether the DiGiacomos received payments which they may be ordered to disgorge, *to be attended by the DiGiacomos,* is scheduled on
>
> WEDNESDAY, SEPTEMBER 22, 1999, AT 9:30 A.M....

## C. DISCUSSION

 The Debtor does not, and, indeed, we find could not, contest the conclusion that this case could be converted from Chapter 11 to Chapter 7 on the ground that it is unable to consummate its Plan, pursuant to 11 U.S.C. § 1112(b)(7), or because it has materially defaulted on the terms of the Plan, pursuant to 11 U.S.C. § 1112(b)(8). Rather, the Debtor's counsel, offering to change the disbursing agent, or to himself "perform the ministerial task of distribution" of $8000 held "in an escrow account" plus the proceeds of the SPCI settlement "at no cost to the estate," Memorandum of Law of Debtor in Opposition to Conversion of Debtor's Case at 2, 1, 2, cited *In re K & M Printing, Inc.,* 210 B.R. 583 (Bankr.D.Ariz.1997); and *In re T.S.P. Industries, Inc.,* 117 B.R. 375, 377 (Bankr.N.D.Ill.1990), for the principles that

> [a]ll property of the estate and all of the post-petition assets have revested in the Debtor. There is no asset for a Trustee to administer.... Appointment of a Trustee would only cause a Trustee to incur fees for which there is no fund from which to pay them....

Thus, the Debtor argued that the conversion, while supported by § 1112(b) grounds, would be impractical and useless because the newly-created Chapter 7 estate would contain no assets. Other authorities also appear to support this reasoning, *e.g., In re BNW, Inc.,* 201 B.R. 838, 848–50 (Bankr.S.D.Ala.1996); *In re Winom Tool & Die, Inc.,* 173 B.R. 613 (Bankr.E.D.Mich.1994); *In re T.S. Note Co.,* 140 B.R. 812 (Bankr.D.Kan.1992); *In re H.R.P. Auto Center, Inc.,* 130 B.R. 247, 256–57 (Bankr.N.D.Ohio 1991); J. Caddell, *Post Confirmation Conversion of Chapter 11 Cases and Other Post–Confirmation Issues,* NORTON BANKR.L. ADVISOR 7–11 (August, 1997); S. Gates, *Conversion of the Post–Confirmation Chapter 11 Case: Selected Problems, Needed Reform, and Proposed Amendments,* 6 J.BANKR.LAW & PRAC. 219, 232–34 (1997) ("Gates"); and R. Orlik, *Conversion After Chapter 11 Confirmation What Is It Good For?—Absolutely Nothing,* 23 CALIF. BAR J. 91 (1996) ("Orlik").

The USTE, while acknowledging at least some of this authority, cited contrary authority, *e.g., In re Smith,* 201 B.R. 267 (D.Nev.1996); *In re Calania Corp.,* 188 B.R. 41, 43 (Bankr.M.D.Fla.1995); and *In re Midway, Inc.,* 166 B.R. 585, 589–91 (Bankr.D.N.J.1994). *See also Abbott v. Blackwelder Furniture Co.,* 33 B.R. 399, 402–03 (W.D.N.C.1983); *In re Nardulli & Sons Co.,* 66 B.R. 871, 876 (Bankr.W.D.Pa. 1986), *rev'd on other grounds,* 836 F.2d 184 (3d Cir.1988); and *In re Pauling Auto Supply, Inc.,* 158 B.R. 789, 793–95 (Bankr. N.D.Iowa 1993). The USTE further suggested that the court's allowing a post-confirmation Chapter 7 trustee to pursue the debtors' principals in bankruptcy court in *Donaldson v. Bernstein,* 104 F.3d 547, 554 (3d Cir.1997), establishes this second line of cases as the law of this Circuit.

We do not believe that the *Donaldson* decision, which merely distinguishes *T.S. Note, supra;* and *H.R.P., supra,* because the claims at issue in *Donaldson* were not a "simple default under a plan and the

likely invalidity of the debtors to complete the plan as confirmed," as were at issue in those cases, but rather concerned a "breach of their fiduciary duties" by the debtor's principals, 104 F.3d at 554, can be read as broadly as the USTE suggests. We do not believe that *Donaldson* rejects the first line of authorities, cited at page 57 *supra*, but rather distinguishes their facts from these before the court.

■ However, we think that *Donaldson* does stand for the principle that claims arising from conduct of a debtor's principals in the course of administration of a bankruptcy case clearly can be claims which are property of the Chapter 7 estate if that case is converted from Chapter 11 to Chapter 7 post-confirmation. Several of the cases holding that the Chapter 7 estate would not include much of the former Chapter 11 debtor's property upon conversion appear to concede that claims not pursued by the debtor, such as claims against the debtor's principals (or professionals) for their conduct during the case, may well be property of the Chapter 7 estate after conversion. *See K & M, supra,* 210 B.R. at 586; *H.R.P., supra,* 130 B.R. at 257; and *TS Note, supra* 140 B.R. at 813 (conceding that "non-administered assets such as possible causes of action remaining" would be property of a Chapter 7 estate). *Compare BNW, supra,* 201 B.R. at 848–49 (involving only a claim of a pre-petition creditor, similar to the scenario presented by Orlik, *supra,* over which the BNW Court held that it lacked jurisdiction at that juncture); *Winom Tool, supra,* 173 B.R. at 614–15 (involving a dispute over rights to proceeds of pre-petition accounts receivable); and *T.S.P., supra,* 117 B.R. at 375–76 (apparently involved attempts to liquidate a debtor's pre-petition accounts receivable). As Gates points out, 6 J.BANKR.LAW & PRAC. at 232–34, the "literal reading" of 11 U.S.C. § 348 supported by such cases as *Winom Tool* and *T.S.P.* would nevertheless support the conclusion that property remaining the Chapter 11 estate, as opposed to

revesting in the debtor, would be property of the Chapter 7 estate upon conversion.

Most of the potential property of the instant Debtor's estate is the proposed possible $15,000 settlement proceeds from SPCI. We may order SPCI to disgorge even more of its compensation. A claim may be asserted against the DiGiacomos. It would clearly be awkward, if not represent a conflict of interests, for the Debtor to attempt to assert the claim against the DiGiacomos, making it likely that the USTE or some other entity would be obliged to assert any such claim. *See, e.g., In re Nicolet, Inc.,* 80 B.R. 733, 737–40 (Bankr.E.D.Pa.1987); and *In re LaBrum & Doak, LLP,* 1998 WL 246530, at *1–*2 (Bankr.E.D.Pa. May 14, 1998).

In fact all of the proceeds generated or to be generated in this case, with the exception of the $8,000 held "in an escrow account" and of which the USTE suggested the source was an allocation to "an unsecured creditor hold back fund during the course of operations under the Debtor's agreement with [SPCI]," are the product of claims uncovered by the USTE and have either been or will be prosecuted by it or would be the fare of a Chapter 7 trustee. All of these proceeds would appear properly classified property of the Chapter 7 estate upon conversion of the case at this time, irrespective of which of the lines of cases referenced at page 57 *supra,* this court chooses to follow.

We do note that particularly the *Smith* and *Midway* cases would support the principle that all assets held by a former Chapter 11 debtor at the time of a post-confirmation conversion to a Chapter 7 case should be property of the Chapter 7 estate, based upon the argument that any other result would render 11 U.S.C. §§ 1112(b)(7), (b)(8) meaningless. This argument, which Gates agrees leads to a preferred result, 6 J.BANKR.LAW & PRAC, at 234–40, is described by him as "Code hermeneutics . . . an attempt to interpret Code sections in light of other

sections and the Code as a whole." *Id.* at 235.

We do believe that, in the context of this case, where conversion is justified because post-confirmation claims are to be pursued and collected by parties other than the debtor, the property acquired by the Debtor's estate during the Chapter 11 case must also be turned over to the Chapter 7 trustee. We are less certain that these policy arguments would justify post-confirmation conversion in a case where the only potential assets of a Chapter 7 estate would be property which the Code appears to indicate would normally revest in the debtor pursuant to 11 U.S.C. § 1141(b). Thus, we will continue to be suspect of such conversions.[1] However, there is no reason to hesitate to convert this case given the foregoing instant circumstances.

## D. CONCLUSION

An Order granting the Motion and converting this case to a Chapter 7 case, and urging the USTE to appoint a trustee as soon as possible, who will prosecute the matters listed for a hearing on September 22, 1999, will be entered.

---

1. For example, in the recent related cases of *In re Musicom Int'l Inc.,* Bankr.No. 96–30334DAS; and *In re Celebrity Communications, Inc.,* Bankr.No. 96–30333DAS, the Chapter 7 trustee, appointed post-confirmation, attempted to administer assets held by the debtors at the time of conversion which were subject to a security interest which greatly exceeded the amount of the monetary assets on hand. Such cases could not be administered as asset cases by a Chapter 7 trustee and probably never should have been converted. Moreover, we support the *BNW* court in its conclusion, 201 B.R. at 848–50, that this court should not be the depositary of attempts by frustrated creditors (or unpaid professionals of the debtor) to enforce plan terms through conversion. Such claims are for the state courts unless they are the basis for the filing of a new involuntary case in this court.