In re TROUTMAN ENTERPRISES, INC., Converted Debtor.

Donald F. Harker, Chapter 7 Trustee, Plaintiff,

v.

Rufus Troutman, Terry Troutman, and Lester Troutman, as Surviving Shareholders of Troutman Enterprises, Inc., Defendant.

Bankruptcy No. 92–01988.
Adversary No. 99–3099.

United States Bankruptcy Court, S.D. Ohio, Western Division at Dayton.

Jan. 24, 2000.

William A. Sherman, II, Tim J. Robinson, Cincinnati, OH, for Movants.

Donald F. Harker, III, Dayton, OH, Chapter 7 Trustee.

Ira Rubin, Dayton, OH, Special Counsel for Trustee, Donald F. Harker, III.

**DECISION ON ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S COMPLAINT FOR TURNOVER AND AUTHORIZING DISTRIBUTION OF FUNDS**

THOMAS F. WALDRON, Bankruptcy Judge.

The issues presented for determination in this case highlight the Congressionally-designed default effect of confirmation in connection with property of the estate in a Chapter 11 case and a deviation from that effect caused by a disingenuous debtor. The relevant pleadings include the Chapter 7 Trustee's Complaint for Turnover of Property (Doc. 1–1) and the Third–Party Defendants' Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and Fed. R.Bankr.P. 7012(b)(6), or, Alternatively, for Summary Judgment Dismissing Complaint and Memorandum of Law in Support Thereof (Doc. 9–1). Pursuant to the parties' agreement and a prior order (Doc. 21–1), the Chapter 7 Trustee's Complaint and the Third–Party Defendants' Motion are determined as a matter of summary judgment. The Chapter 7 Trustee's Complaint is **DENIED** in part and **GRANTED** in part.

## I. FACTS

On July 11, 1986, Troutman Enterprises, Inc. ("TEI") purchased a $500,000 life insurance policy (the "First Policy") on Larry Troutman, a shareholder and officer of TEI. TEI was both the owner of the policy and the named beneficiary at the time it was purchased, and on April 23, 1992, the date TEI filed a Chapter 11 bankruptcy case. On September 1, 1993, TEI's Amended Plan of Reorganization was confirmed (Doc. 165–1). The existence of TEI's interest as owner and beneficiary of the First Policy was not listed in the filed Schedule B—Personal Property, nor was any information concerning the First Policy included in the Disclosure Statement or the Confirmed Amended Plan, nor was any information concerning TEI's interest in the First Policy otherwise disclosed in the Chapter 11 proceedings or until after the case was converted to a Chapter 7.

On January 30, 1995, approximately seventeen months following the entry of the confirmation order, TEI, as the Reorganized Debtor, purchased a $1,000,000 life insurance policy (the "Second Policy") on

Roger Troutman, also a shareholder and officer of TEI. As in the First Policy, TEI was both the owner and named beneficiary of the Second Policy.

On January 4, 1996, TEI's Chapter 11 case was converted to a Chapter 7 case. On April 22, 1996, during the pendency of the Chapter 7 case and without disclosure of any information concerning the policies in any filing with the court, and without the Trustee's knowledge or consent, TEI executed documents which purported to transfer ownership of both Policies from TEI to Roger Tee Enterprises, Inc., a related corporation. TEI, however, remained at all times the named beneficiary of each Policy. On April 25, 1999, the deaths of Larry Troutman and Roger Troutman occurred, and the proceeds of both Policies became payable to TEI.

On May 14, 1999, over seven years after the initial Chapter 11 schedules were filed, the current Vice–President of TEI filed an "Amendment to Schedule B, Category Number 9" which, for the first time in any filing in the bankruptcy records, disclosed TEI's interest in the First and Second Policies. Following the disclosure of TEI's interest in the Policies, the Chapter 7 Trustee brought an adversary proceeding against the insurer for turnover of all proceeds to which TEI had become entitled upon the deaths of the insureds.[1] The Remaining Shareholders of TEI subsequently intervened in the litigation as Third–Party Defendants, asserting they were entitled to the proceeds of the Policies and moving for dismissal of the Trustee's complaint for failure to state a claim, or in the alternative, for summary judgment.

## II. JURISDICTION

In accordance with the Standing Order of Reference entered in this district on July 30, 1984, the court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(a) and (b). The within matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate; § 157(b)(2)(E)—orders to turn over property of the estate; and § 157(b)(2)(O)— other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship.

## III. ANALYSIS

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Slone–Stiver v. Mazer Corp. (In re Interstate Graphics, Inc.)*, 223 B.R. 116, 122 (Bankr. S.D.Ohio 1998) (quoting *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 198 (6th Cir. BAP 1998)). There are no disputed issues of fact among the parties; accordingly, the Trustee's Complaint and the Third–Party Defendants' Motion will be determined as a matter of law.

Although courts acknowledge trepidation in connection with a " 'venture into analysis of the impact of a confirmed plan of reorganization upon a subsequent conversion to Chapter 7,' " *In re D & D Furniture, Inc.*, 239 B.R. 54, 55 (Bankr. E.D.Pa.1999) (quoting *In re Pavlovich*, 952 F.2d 114, 116 (5th Cir.1992)), the applicable statutes and developed decisions provide illuminated, but divergent, pathways, which, in the circumstances of this Chapter 7 case, result in the Trustee obtaining the proceeds of the First Policy, but not of the Second Policy.

While the final resolution of the issues presented requires an analysis of the interrelationships of various sub-sections of 11 U.S.C. §§ 348 (Effect of conversion), 521 (Debtor's duties), 541 (Property of the estate), 554 (Abandonment of property of the estate) and 1141 (Effect of confirma-

---

1. The insurer later interpleaded the proceeds of both Policies and was dismissed from the adversary.

tion), the starting point is a recognition of every debtor's duty to begin the bankruptcy process with honest, complete, and accurate information as required by § 521(1). "The debtor shall—(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and expenditures, and a statement of the debtor's financial affairs[.]" 11 U.S.C. § 521(1).

A further essential component of the analysis is a determination of property of the estate in this present Chapter 7 case. The Chapter 7 Trustee is entitled to the proceeds of the Policies only to the extent that the proceeds are property of the estate in this converted Chapter 7. Section 541(a) provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . .

(6) Proceeds . . . of or from property of the estate, . . . .

11 U.S.C. § 541(a)(1) & (6).

It is essential to recognize the all-encompassing nature of § 541(a) is often significantly limited when a confirmed Chapter 11 case is subsequently converted to a Chapter 7. This is because the entity created upon confirmation and operating postconfirmation pursuant to a confirmed Chapter 11 plan—the Reorganized Debtor—is legally distinct from the entity which existed preconfirmation and whose assets will be administered in the converted Chapter 7—the Converted Debtor. Upon the confirmation of a plan in a Chapter 11, the effect of confirmation is determined by § 1141(b) & (c):

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(b) & (c).

Neither the Order Confirming the Plan nor the Confirmed Amended Plan contain any provisions altering the effect of § 1141(b) & (c). The Plan simply states: "All property of the estate shall revert to the Debtor at confirmation . . . and the Debtor shall continue its operation and make payments as provided for in the confirmed Plan." As the Seventh Circuit has held, "Section 1141(c) provides with immaterial exceptions that 'except as provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.'" *In re Penrod*, 50 F.3d 459, 462–463 (7th Cir. 1995). Accordingly, all property of the estate vested in the Reorganized Debtor free and clear of the claims of creditors upon confirmation of the Amended Plan.

The question becomes what effect, if any, does the conversion of the Chapter 11 case, with its confirmed plan, to a Chapter 7 case have on the confirmed plan or property which has vested in the Reorganized Debtor? In the context of this case, the answer is virtually none. Conversion of the Chapter 11 to a Chapter 7 case does not invalidate the plan previously confirmed in the Chapter 11 or in any way affect the property which has vested in the Reorganized Debtor. The effect of conversion is governed by § 348(a), which merely states, "Conversion of a case . . . constitutes an order for relief under the

chapter to which the case is converted, but ... does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). *See, e.g., State of Ohio, Dep't of Taxation v. H.R.P. Auto Ctr., Inc. (In re H.R.P. Auto Ctr., Inc.),* 130 B.R. 247, 256 (Bankr.N.D.Ohio 1991) ("Post-confirmation conversion, therefore, does not create a new estate or convert property of the [Reorganized Debtor] into property of the estate."). Additionally, § 348(d) addresses the claims to be administered in the converted Chapter 7, providing that claims arising postconfirmation and preconversion other than for administrative expenses will be considered prepetition claims in the converted Chapter 7. 11 U.S.C. § 348(d). As explained by one court:

> [A]n explanation of what is being converted seems advisable because the pleadings indicate that the creditors may expect the confirmed debtors' assets to be available to the chapter 7 trustee and the debtors assume that the ... assets of the debtors will be controlled by the trustee upon conversion.... [C]onversion after substantial consummation of a confirmed chapter 11 plan converts only the preconfirmation debtor-in-possession [—the Converted Debtor—] and the case that was before the court, not the post-confirmation debtor [—the Reorganized Debtor—] which by legal fiction is a separate entity, much as was the pre-filing entity. Thus, what is being converted here [is] the case[ ] and the assets, if any, whether tangible or intangible, remaining in the [Converted Debtor's] pre-confirmation estate[ ]. In these cases, it would seem only non-administered assets such as possible causes of action may remain. If the post-confirmation entities and their assets are to be administered under chapter 7, new voluntary or involuntary filings must be made.

*In re T.S. Note Co.,* 140 B.R. 812, 813–814 (Bankr.D.Kan.1992) (internal citations omitted).

This issue was also addressed more recently in *In re Winom Tool & Die, Inc.,* 173 B.R. 613 (Bankr.E.D.Mich.1994). *Winom* involved creditors' objections to the Chapter 7 Trustee's proposed settlement and compromise of certain claims surrounding accounts receivable. The creditors, all of whom had obtained judgments against the reorganized debtor based upon the extension of postconfirmation, preconversion credit, sought a determination that the accounts receivable were not property of the estate, which would allow them to pursue the assets without accounting to the Chapter 7 Trustee and sharing the recovery with the creditors of the converted debtor. Citing Congressional concerns that the confirmation of a plan of reorganization in a Chapter 11 case be final as to the issues dealt with in the plan, *see* § 1144, the court concluded, "[P]roperty which vests in the [reorganized] debtor under § 1141(b) does not revest in the estate [of the converted debtor] upon conversion to chapter 7." *Winom,* 173 B.R. at 621. The court went on to describe in detail the nature of an asset created postconfirmation by a reorganized debtor:

> In short, property interests may be held by the post-petition debtor in its own right (non-estate property) or as debtor in possession (estate property). I therefore reject the trustee's contention that post-petition property acquisitions necessarily constitute estate property under § 541(a)(6) or (7).

> In this case, those accounts receivable which were generated pre-confirmation were either part of the chapter 11 estate by virtue of § 541(a)(1) or, if generated post-petition, became a part of the estate under § 541(a)(6) or § 541(a)(7). But that is of no avail to the trustee because those accounts subsequently vested in the Debtor under § 1141(b) when its plan was confirmed.

> . . . .

> Although I conclude that the chapter 11 estate survived confirmation, the fact

remains that any accounts receivable created after confirmation could only have been the product of assets belonging to the Debtor (who owned everything), not the debtor in possession (who owned nothing). Thus ... there is no basis for concluding that post-confirmation accounts receivable (if any) became a part of that estate under § 541(a)(6) or § 541(a)(7).

*Winom,* 173 B.R. at 624–625. *See also In re Durrett,* 187 B.R. 413, 419 (Bankr. D.N.H.1995) (recognizing the distinction between the reorganized debtor and the converted debtor, and holding an asset which was not property of the original Chapter 11 estate does not become property of the converted Chapter 7 estate).

Against this background, the court examines the competing claims to the proceeds of each Policy.

## A. The Second Policy

The court initially considers the Second Policy, acquired by TEI seventeen months *postconfirmation* on the life of Roger Troutman in the amount of $1,000,000. TEI, as the Reorganized Debtor, was the original owner of the Policy and was the named beneficiary at all times under the Policy.

█ Pursuant to the above analysis, TEI, operating postconfirmation as the Reorganized Debtor, was fully authorized to conduct its business affairs and, as a result of the Confirmed Amended Plan and the effect of § 1141(b) & (c), hold assets separate and apart from the original property of the Chapter 11 estate. Such assets are not included as property of a converted debtor's estate. *See Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 462 (6th Cir. 1991) (holding postconfirmation preconversion payments made by a reorganized debtor could not be recovered by the

Chapter 7 Trustee upon conversion because the payments had been made from property which had revested in the reorganized debtor upon confirmation and was no longer property of the estate); *Carter v. Peoples Bank & Trust Co. (In re BNW, Inc.),* 201 B.R. 838, 848–849 (Bankr. S.D.Ala.1996) (noting that whether creditors seeking relief against a reorganized debtor should pursue a conversion of the original Chapter 11 or a new bankruptcy filing against the reorganized entity depends upon the provisions of the confirmed plan, "but in most instances, after substantial consummation, conversion of a confirmed Chapter 11 case accomplishes little or nothing" because of the lack of assets remaining in the converted debtor's estate); *In re Brown,* 178 B.R. 722, 727 (Bankr.E.D.Tenn.1995) (noting that "courts recognize the principle that the revesting of estate property in the debtor means that the property cannot pass over into a Chapter 7 estate on conversion unless the plan so provides," and that "where property leaves the bankruptcy estate and vests in the debtor, courts have had no difficulty in recognizing that conversion does nothing to recapture the property").[2]

That this is the result intended by Congress in the Chapter 11 context is further evidenced by different Congressional choices for debtors filing under Chapter 13. Unlike Chapter 11, § 541's definition of property of the estate is expanded in Chapter 13 via § 1306(a)(1), which provides: "Property of the estate includes, in addition to the property specified in section 541 of this title[,] all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first[.]" 11 U.S.C. § 1306(a)(1). Section 348 itself likewise treats property

---

**2.** In addition to the many reported cases on the topic, this result has been noted by respected authors in a variety of treatises and journals. *See, e.g.,* DAVID A. LANDER, ESQ. &

HON. ROBERT D. MARTIN, *Postconfirmation Conversion From Chapter 11 to Chapter 7 Rarely Makes Sense,* Norton Bankr.Law Adviser, Sept. 1994.

of the estate in a converted Chapter 13 differently from a converted Chapter 11: "If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2).

Early in the life of the Bankruptcy Code, the Sixth Circuit interpreted a similar disparity between Chapters 11 and 13 in resolving an issue concerning an attempted extension of § 1301's [3] codebtor stay to a codebtor under Chapter 11. The Circuit began its analysis by explaining:

It is a fundamental rule of statutory construction that inclusion in one part of a congressional scheme of that which is excluded in another part reflects a congressional intent that the exclusion was not inadvertent. In particular, this Court has acknowledged the Bankruptcy Code as a detailed and calculated statutory scheme particularly appropriate to *in pari materia* construction.

*Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1197–98 (6th Cir.1983) (internal citations omitted).

The court first examined the automatic stay provisions under § 362, applicable to all chapters of the Bankruptcy Code, and then noted the expanded protections afforded to codebtors in Chapter 13 pursuant to § 1301. Focusing on the absence of any corresponding codebtor protections in Chapter 11, the Circuit concluded:

In the action *sub judice*, such a construction of Chapters 11 and 13 of the Code support the proposition that Congress did not envision or intend the automatic stay of proceedings to be available to solvent co-defendants of a

Chapter 11 debtor. Particularly, Chapter 13 expressly stays proceedings of creditors against co-debtors of the petitioner, 11 U.S.C. § 1301(a), whereas similar language is significantly absent from Chapter 11. Not only is the absence of any expansion of the scope of the stay in Chapter 11 probative of congressional intent but, further, the pronouncement which does appear in Chapter 13 is extremely limited; it applies only to co-debtors rather than, as in the action at bar, co-defendants of the petitioner. Accordingly, *in pari materia* construction of Chapters 11 and 13 counsel that Congress did not envision or intend the § 362 stay to be utilized in a manner other than for the purpose of protecting the debtor and its estate.

*Id.* at 1198 (citations omitted). *See also Field v. Mans,* 516 U.S. 59, 67–68, 116 S.Ct. 437, 442, 133 L.Ed.2d 351 (1995) (noting the general rule that " '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' ").

Chapter 11 contains no provision similar to § 1306 which would include property acquired by the Reorganized Debtor postpetition as property of the estate, nor is there any Chapter 11 corollary to § 348(f)(2)'s inclusion of all property existing at the time of conversion where a Chapter 13 debtor has converted a case in bad faith. As did the Circuit in *Lynch* when analyzing the stays of proceedings by creditors, this court finds Congress's specifically-tailored expansions of property

**3.** Section 1301 provides:
(a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or
(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.
11 U.S.C. § 1301(a).

of the estate in Chapter 13 cases and converted Chapter 13 cases, and the corresponding absence of any such expansions in Chapter 11 cases and converted Chapter 11 cases, probative of Congressional intent and instructive of which property Congress wished to make available to satisfy the claims of creditors in a Chapter 11 case which has been converted to a case under Chapter 7.

Accordingly, the court determines the proceeds of the Second Policy are not property of the converted Chapter 7 estate, and the Chapter 7 Trustee's complaint for turnover of the proceeds of the Second Policy is denied.

## B. The First Policy

Given the above analysis of the ordinary effect of the conversion of a confirmed Chapter 11 case to Chapter 7, what, if anything, would require a different result in connection with the First Policy? The First Policy was acquired by TEI six years *prepetition* on the life of Larry Troutman in the amount of $500,000. Of particular significance is that the First Policy, although clearly constituting a "legal or equitable interest[ ] of the debtor in property as of the commencement of the case" (§ 541(a)(1)), was not disclosed at any point in these proceedings—spanning more than seven years before this court—until the proceeds became payable following the death of Larry Troutman.

Separate from any expected outcry that arises from allowing a debtor in a bankruptcy proceeding to secret an asset, by intention or inattention, and then retain the benefit of such wrongful conduct, the default rule established by § 1141(b), that property of the estate vests in the reorganized debtor upon confirmation of a plan of reorganization, does not apply where the debtor has failed to disclose an asset in accordance with the Code's requirements.

In *Rooster, Inc. v. Raphael Roy, S.R.L.,* the court relied on a theory of judicial estoppel to conclude that if a Chapter 11 debtor had failed to disclose an asset as property of the estate, the asset remained property of the estate available for distribution to creditors. The court reasoned that the Chapter 11 debtor must be estopped from itself recovering the asset postconfirmation because "[i]n such an instance, creditors would have improperly voted to accept a distribution from the debtor's estate without knowing all its material assets; one of the debtor's assets . . . would have been hidden by the debtor in an attempt to retain it after the bankruptcy was administered." *Rooster, Inc. v. Raphael Roy, S.R.L. (In re Rooster, Inc.),* 127 B.R. 560, 573 (Bankr.E.D.Pa.1991).

The Fifth Circuit recently held that "[i]t goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets," and that when "[v]iewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197, 207–208 (5th Cir.1999). Also applying the doctrine of judicial estoppel, the *Coastal Plains* court reasoned that " '[t]he interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.' " *Id.* at 208 (citation omitted).

The First Circuit has described this constitutive element of all bankruptcy proceedings as absolutely essential: "As we have stated, '[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure.' Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *Boroff v. Tully (In re Tully),* 818 F.2d 106,

110 (1st Cir.1987) (internal citations omitted). The Ninth Circuit is no less direct: "There is no more basic a command than to come clean and truthfully declare all assets and liabilities in bankruptcy. Not to do so violates the heart of the process." *United States v. Kubick*, 199 F.3d 1051, 1056 (9th Cir.1999). *Accord In re Famisaran*, 224 B.R. 886, 891 (Bankr.N.D.Ill. 1998) ("The debtors have a duty to truthfully answer questions presented in the various schedules and filings carefully, completely and accurately."); *In re Moix–McNutt*, 220 B.R. 631, 638 (Bankr. E.D.Ark.1998) ("The submission of accurate, complete schedules are required by the Code. 11 U.S.C. § 521(1) (1994).").

Additionally, many courts have reached a similar conclusion in reliance on § 554(c) & (d), which provide:

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554(c) & (d).

■ Reading these two subsections together, property not scheduled pursuant to § 521(1) is not abandoned under § 554(c) and hence remains property of the estate pursuant to § 554(d) as property neither administered nor abandoned. Cases are uniform in following this rationale to conclude that a debtor's failure to disclose an asset prevents the asset from being administered in the bankruptcy proceeding and results in the asset remaining property of the estate. *See Cundiff v. Cundiff (In re Cundiff)*, 227 B.R. 476, 478–479 (6th Cir. BAP 1998) (collecting cases); *Dwyer v. Peebles (In re Peebles)*, 224 B.R. 519, 520–521 (Bankr.D.Mass.1998); *Decker v. Voi-*senat *(In re Serrato)*, 214 B.R. 219, 226 (Bankr.N.D.Cal.1997).

■ Pursuant to the above authority, TEI's failure to comply with the Code's requirements to disclose the existence of the First Policy during the Chapter 11 proceeding prevented that asset from being administered in the Chapter 11 case. Thus, the First Policy remained property of the Chapter 11 estate and did not revest in the Reorganized Debtor. As discussed previously, property which does not revest in a reorganized debtor upon confirmation becomes property of the Chapter 7 estate upon conversion. Accordingly, the proceeds of the First Policy payable to TEI upon the death of Larry Troutman constitute property of the estate of the Converted Debtor. The Chapter 7 Trustee's complaint for turnover of the proceeds of the First Policy is granted.

## IV. CONCLUSION

The Chapter 7 Trustee's complaint for turnover of the proceeds of the Second Policy (Roger Troutman; $1,000,000) is **DENIED**, while the Trustee's complaint for turnover of the proceeds of the First Policy (Larry Troutman; $500,000) is **GRANTED**.

An order in accordance with this decision authorizing the distribution of the proceeds of the First and the Second Policies, which are being held pursuant to the Agreed Order Granting Motion For Interpleader (Doc. 22–1), is simultaneously entered.

Further, not at their request, nor as an accommodation to counsel, the order in accordance with this decision will be entered as a final order which terminates further proceedings in connection with the issues determined in this decision, upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment pursuant

to Federal Rule of Bankruptcy Procedure 7054.

**SO ORDERED.**