**In re John Morris HUGHES, Debtor.**

**Cynthia A. Hagan, Trustee of the Estate of John Morris Hughes, Plaintiff,**

**v.**

**John Morris Hughes Defendant.**

**Bankruptcy No. 00–41773.
Adversary No. 01–4133.**

United States Bankruptcy Court, S.D. Illinois.

June 24, 2002.

Cynthia A. Hagan, Hendricks & Hagan, Carbondale, IL, for Plaintiff.

Douglas A. Antonik, Mt. Vernon, IL, for Defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

The trustee in this case seeks a determination that property existing at the time of conversion of the debtor's case from Chapter 11 to Chapter 7 became property of his Chapter 7 estate. The debtor objects, asserting that property of his Chapter 11 estate vested in him upon confirmation of his plan and that, consequently, no property remains as property of his Chapter 7 estate. At issue is the effect of § 1141(b) of the Bankruptcy Code, which provides that confirmation of a debtor's Chapter 11 plan vests all property of the estate in the debtor, *see* 11 U.S.C. § 1141(b), and § 348 of the Code which provides that the order for relief in a converted case relates back to the date of the original filing. *See* 11 U.S.C. § 348.

The facts are undisputed. On September 20, 2000, debtor John Hughes filed a Chapter 13 case, which he promptly converted to a proceeding under Chapter 11.[1] On that same date, two businesses of which the debtor is president and sole shareholder—John Hughes, Inc., and Hughes Excavating, Inc.—also filed for Chapter 11 relief. The corporate debtors subsequently obtained consolidation of their cases, continuing in the lead case of John Hughes, Inc. ("Hughes Inc.")

In a report to the Court, the debtor stated that he needed bankruptcy protection because of his guarantee of the debts of his two corporations.[2] (Narr./Rpt., Doc. 31, filed Jan. 8, 2001). The debtor proposed a plan in which he promised to pay these debts in the event the corporate debtors failed to pay them through their Chapter 11 case. Specifically, the plan stated:

> John Hughes shall remain obligated on all the obligations he guaranteed or co-signed ... with Hughes Excavating, Inc. or John Hughes, Inc. *Payments to [creditors with claims guaranteed by John Hughes] shall be from [the Hughes Inc. Chapter 11]* with John Hughes remaining an obligor on said obligations.

(Plan of Reorg., Doc. 39, at 4 (emphasis added)).

The debtor's plan further provided that creditors with such guaranteed debts were prohibited from pursuing John Hughes on his obligation "unless [Hughes Inc.] fails to pay the primary obligation pursuant to its Chapter 11 Plan of Reorganization." However, the plan stated,

> [i]f [Hughes Inc.] fails to pay pursuant to its confirmed Plan of Reorganization,

---

1. The debtor filed his motion to convert to a Chapter 11 proceeding on October 25, 2000, prior to filing his Chapter 13 plan and schedules.

2. The debtor further indicated that he had a marital dissolution proceeding pending in state court.

*John Hughes shall ... pay the same according to the terms and conditions as set forth in the [Hughes Inc.] Chapter 11.*

(Plan of Reorg., Doc. 39, at 3–4 (emphasis added)). Both the debtor's plan and the Chapter 11 plan of Hughes Inc. proposed to pay unsecured debts in full, without interest, over a five year period.

In addition to guaranteeing payment of corporate debts, the debtor's plan provided for the sale of the debtor's residence and sale of a houseboat owned with the debtor's son, with the proceeds to be applied to liens on those properties. (Plan of Reorg., at 2–3). The debtor proposed to retain a "shop building" used in his businesses and to make payments on this building from lease payments by John Hughes, Inc.[3] (Plan of Reorg., at 6).

The debtor's plan was confirmed on May 8, 2001. On July 12, 2001, the Court notified the parties that it would issue a final decree closing the debtor's Chapter 11 case unless cause were shown why the case should remain open. The debtor objected to entry of a final decree, stating that he needed to file a motion with the Court to sell real estate but had only recently procured a broker to sell the property. The debtor asserted, therefore, that the case should stay open until the real estate that was to be sold under the plan had been sold.

On July 31, 2001, a creditor, First National Bank of Allendale ("Bank"), filed a motion to convert the debtor's case to Chapter 7. The Bank asserted that the debtor had made no payments under his Chapter 11 plan and that the debtor's two

businesses, his only source of income, were continuing to lose money. In addition, the Bank alleged,

[the] debtor is attempting to sell real estate and personal property without knowledge of this Court and without intending to pay net sale proceeds to the Bank as judgment lien holder.

(Mot. to Convert, doc. 72, at 2). On August 8, 2001, after a hearing on the Bank's motion, the Court entered an order converting the debtor's Chapter 11 case to a proceeding under Chapter 7.

In the meantime, the Chapter 11 plan of Hughes Inc. failed to obtain confirmation and, on July 31, 2001, the Hughes Inc. case was converted to a proceeding under Chapter 7. The Chapter 7 trustee proceeded to liquidate the assets of Hughes Inc. and, on November 2, 2001, reported the sale of all the equipment, inventory, and contents of the debtor's businesses. The Bank subsequently obtained relief from stay as to the "shop building" in both the debtor's and Hughes Inc.'s Chapter 7 cases.

The trustee of the debtor's Chapter 7 case filed this declaratory judgment action, seeking a determination that all property of the debtor's estate as of the original petition date that remained in the debtor's possession and control at conversion became property of his Chapter 7 estate. The trustee argues that although § 1141(b) vests property of a Chapter 11 estate in the debtor upon confirmation of the debtor's plan,[4] the interplay of other Code provisions has the effect of revesting such property in the estate once a Chapter 11 case is converted to Chapter 7. Specifi-

---

**3.** The "shop building" was listed as an asset in both the debtor's and Hughes Inc.'s bankruptcy cases.

**4.** Section 1141(b), governing the effect of confirmation in a Chapter 11 case, states:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

11 U.S.C. § 1141(b).

cally, the trustee cites 11 U.S.C. § 348(a),[5] which provides that conversion of a case "does not effect a change in the date of the filing of the petition [or] the commencement of the case," and 11 U.S.C. § 541(a), which defines property of the estate as all interests of the debtor in property "as of the commencement of the case."[6] The trustee asserts that because § 348 provides for "relation back" of the commencement of a converted case to the date of the original petition and because "property of the estate" is defined as of that date, property of the debtor's converted Chapter 7 estate here must include property of his original estate notwithstanding the vesting of such property in the debtor under § 1141(b).

The Code does not clearly outline the effect of converting a Chapter 11 case with a confirmed plan to Chapter 7, and courts dealing with whether and to what extent an estate exists in the converted Chapter 7 case have reached differing results.[7] *See In re D & D Furniture, Inc.*, 239 B.R. 54, 57 (Bankr.E.D.Pa.1999) (collecting cases); *see generally* 4 Norton Bankr.L. & Prac.2d *Conversion*, § 95:12 (2002). Some courts hold that conversion of a confirmed Chapter 11 case is pointless, because once property of the Chapter 11 estate vests in the debtor upon confirmation of the plan, no property remains to be administered in the converted case. *See, e.g., In re K & M Printing, Inc.*, 210 B.R. 583, 585 (Bankr. D.Ariz.1997); *In re Winom Tool & Die, Inc.*, 173 B.R. 613, 621 (Bankr.E.D.Mich. 1994). Other courts reason that because the Code clearly allows for conversion of a Chapter 11 case to a case under Chapter 7, *see* 11 U.S.C. § 1112(b), to conclude that no estate exists in the converted case renders that provision meaningless. These courts hold, therefore, that property of the debtor revests in the Chapter 7 estate upon conversion to be administered by the trustee in the converted case. *See In re Smith*, 201 B.R. 267, 274 (D.Nev.1996), *aff'd*, 141 F.3d 1179 (9th Cir.1998); *In re RJW Lumber Co.*, 262 B.R. 91, 93 (Bankr. N.D.Cal.2001).

In light of the difficulties created by the Code's opacity on this issue, still other courts have looked to the "language and purpose" of the debtor's plan to determine that property which would have vested in the debtor upon confirmation became property of the debtor's Chapter 7 estate upon conversion. *See In re Consolidated Pioneer Mortgage Entities*, 264 F.3d 803, 807 (9th Cir.2001); *see also In re D & D Furniture, Inc.*, 239 B.R. at 58–59.[8] This

---

**5.** Section 348(a), regarding the effect of conversion, provides:

> Conversion of a case from a case under one chapter to a case under another chapter ... constitutes an order for relief under the chapter to which the case is converted, but ... does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C. § 348(a).

**6.** Section 541(a) provides:

> (a) The commencement of a case ... creates an estate. Such estate is comprised of ...
> (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a).

**7.** There appears to be no decision from the Seventh Circuit Court of Appeals addressing this issue.

**8.** In *D & D Furniture*, the court found, "in the context of this case," that property acquired by the debtor's estate during its Chapter 11 case must be turned over to the Chapter 7 trustee. 239 B.R. at 59. The court declined to adopt either of the two conflicting lines of authority concerning vesting of estate property in the debtor upon conversion, electing instead to base its decision on the facts of that particular case.

approach, which is essentially fact-based, is consistent with the statutory language of § 1141(b), which provides for the vesting of estate property in the debtor "[e]xcept as otherwise provided in the plan or the order confirming the plan." 11 U.S.C. § 1141(b). Unfortunately, while the Code allows creditors to negotiate for specific language in a plan that would preclude vesting of estate property in the debtor or provide for revesting upon conversion, situations arise in which the plan contains no such explicit language but seems to contemplate such a result. In such an instance, a court may interpret the language of the plan to carry out its intended purpose. In *Consolidated Pioneer*, for example, the court found that although the plan "did not specifically provide that remaining assets would revest in the estate" upon conversion, the plan "contain[ed] explicit provisions regarding the distribution of liquidation proceeds" to creditors and "[gave] the bankruptcy court broad powers to oversee implementation of the plan." 264 F.3d at 807. Under these circumstances, the court held, assets that vested in the reorganized debtor at confirmation revested in the estate when the case was converted to Chapter 7.[9] *Id.*

In the present case, like *Consolidated Pioneer*, neither the debtor's plan nor the order confirming the plan contains a specific provision regarding the vesting of estate property in the debtor or revesting of such property in the estate upon conversion. However, the language and purpose of the plan compel a finding that any property remaining in the debtor's possession constitutes property of his Chapter 7 estate. The plan, by its terms, indicates that

effectuation of the debtor's individual Chapter 11 plan depends on confirmation and implementation of the Chapter 11 plan of Hughes Inc. The plan makes repeated references to Hughes Inc. and states that payment of claims under his individual plan depends on the extent to which such debts are paid in the "confirmed plan" of Hughes Inc. Despite these repeated references, no confirmed plan ever came into existence in Hughes Inc., and the corporate debtors' case was subsequently converted to Chapter 7 and their assets liquidated.

It is well-established that a Chapter 11 plan constitutes a contract between the debtor and creditors in which general rules of contract interpretation apply. *See In re Bartleson*, 253 B.R. 75, 84 (9th Cir. BAP 2000); *Matter of Penrod*, 169 B.R. 910, 916 (Bankr.N.D.Ind.1994), *aff'd* 50 F.3d 459 (7th Cir.1995). Under these rules, the non-occurrence of a condition upon which a contract is based has the effect of rendering the contract unenforceable and, thus, void. *See generally* 12A Ill. L. & Prac., *Contracts* § 412 (1983); 17A Am.Jur.2d *Contracts*, § 677 (2002). While impossibility or inability to perform does not discharge a duty created by contract, when a condition that is implied by the very nature of the contract fails to occur, performance is excused because the contract is not, in reality, an absolute contract. *See* 12A Ill. L. & Prac., *Contracts*, § 412, at 259–60 (1983).

In this case, the parties contemplated that the debtor's individual and corporate Chapter 11 cases, which were filed on the same date, would proceed to confirmation simultaneously.[10] The individual

---

**9.** In *Consolidated Pioneer,* the Chapter 11 plan created a "liquidating corporation" to take title to the debtor's assets and liquidate them for the benefit of investors. 264 F.3d at 804–05. This liquidating corporation was the reorganized debtor that ultimately became the subject of the Chapter 7 case upon conversion.

**10.** Debtor's counsel acknowledged that the individual and corporate cases were filed to-

and corporate debtors' plans were to be confirmed and implemented in conjunction with each other. Failure of the Hughes Inc. case to be confirmed divested the individual debtor's plan of its essence and made implementation of the plan impossible. Because the premise upon which confirmation was based never came into being, confirmation of the debtor's plan was ineffective to create a valid contract between the debtor and his creditors. Under these circumstances, the Court declines to find that confirmation of the debtor's plan vested estate property in him individually so as to preclude the trustee from administering such property upon the subsequent conversion of his case to Chapter 7.

The Court's ruling in this case is limited to the facts before it and does not constitute a *per se* rule regarding the effect of § 1141(b) upon conversion of a Chapter 11 case to Chapter 7 following confirmation. Here, the debtor's case was converted to Chapter 7 within three months of plan confirmation, and the debtor neither made payments to creditors nor sold any property within that time. No steps had been taken to effectuate the plan provisions, and no final decree had been entered. In addition, the debtor's plan provided for the sale of estate assets and payment to secured creditors, a result that will not be affected by the Chapter 7 trustee's administration. Most importantly, given the integral relationship between the individual debtor's Chapter 11 case and that of his two corporations, it is logical and equitable for the debtor's individual assets to be liquidated in Chapter 7 along with his business assets.

For the reasons stated in this opinion, the Court finds that property of the debtor

gether and were intended "to run the same course." (Hrg. on Mot. to Convert, Aug. 8,

remaining in existence at the time of conversion of the debtor's Chapter 11 case to Chapter 7 constitutes property of his Chapter 7 estate. Accordingly, judgment will enter in favor of the trustee and against the debtor on the trustee's complaint for declaratory judgment.

SEE WRITTEN ORDER.